## Gilmore *versus* Hunt's Administrator.

1. Gilmore agreed to convey coal-land, &c., to Hunt, part of the consideration to be paid in notes; in a suit on the notes Hunt gave evidence by way of set-off that Gilmore refused to give him possession, &c., and he had to obtain it by ejectment. The court charged: "If the jury find from the evidence that Gilmore violated his part of the agreement by refusing to allow Hunt possession, they may assess such damages as the evidence would warrant." *Held* to be error.

2. Such instruction was a misdirection not a mere omission.

3. The measure of damage in such case is the amount of rent or profit that Hunt might derive from the property from the time he should have had possession until he obtained it under the ejectment.

16 P. F. Smith—21

4. Such damage would be the mesne profits.

5. The court should hold the jury to the strict legal rule with a firm hand, by setting aside the verdict whenever they disregard it.

October 31st 1870.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county :* No. 21, to October and November Term 1869.

This was an action of assumpsit, to April Term 1854, by John Gilmore against David Hunt on three promissory notes. The defendant pleaded, by way of set-off, that the notes had been given as the consideration of an agreement that the plaintiff should convey to the defendant his undivided moiety of a tract of coal-land, with the appliances for working, &c., of which the parties were joint owners, and that the plaintiff had·refused to give possession, and to comply with the contract, &c.

The case was tried, December 3d 1855, before Hampton, P. J.

The plaintiff gave in evidence, as his claim, three notes from defendant to him, dated February 11th 1848, each for $183.33, and payable respectively in two, four and six months.

The defendant gave in evidence an agreement, made the 21st day of January 1848, between Hunt and Gilmore :—

"That whereas the said parties are tenants in common of a certain tract of land, &c., on which there is a coal-bank now in operation, with a railway and sundry buildings erected thereon, &c.

"Whereas, also, in the course of their business sundry debts have been contracted, for which judgment has been obtained, and upon execution thereupon inquisition has been held this day by the sheriff of Westmoreland county, and the said property has been extended to pay the debts in seven years; whereas, also, it is believed by the said parties that it is their mutual interest to dissolve the partnership and that the said coal-bank, land and concerns generally should be concentrated in one of them, for the purpose of making the best avail of the property for the payment of the said debts, by the said party of the second part taking the whole into his hands, under the extent as allowed by law, and discharging the said liens in the order of priority, according to the appraisement of the jury and the law.   Now, therefore, it is agreed that the said John Gilmore doth hereby agree to sell to the said David Hunt all his title, interest and claim in the said land, coal-bank, railway, carts, ropes and two flats, and other property on the premises, &c., the said property to be now in the possession of said Hunt, and all the accounts and debts due the said firm to be collected for his sole benefit.   In consideration of the interest of the said Gilmore in the said land, &c., Hunt agrees to pay Gilmore $650, viz., $100 on the 28th of the present month, and the balance in three equal instalments, at two, four and six months, for which he is to

[Gilmore *v.* Hunt.]

give three notes with interest. Hunt also agrees to take the whole property at the appraisement of the jury under the extent, and pay the liens in the order of priority, so far as judgment now exists, and also to pay all the other debts of the late firm as he may be legally required, or otherwise as he may arrange to the satisfaction of the creditors, so as to keep Gilmore fully clear and indemnified from every claim against the late firm, &c., it being the meaning of the parties that upon the payment of the $650, Hunt is to be the sole owner of the said property, &c., and alone liable for the payment of all the debts, &c. * * * Gilmore agrees to make a deed for Hunt for his right, interest and claim in said property, upon the payment of the $650."

There were other stipulations not necessary to notice. The first payment of $100 was made by Hunt according to the agreement.

The defendant then offered the record of an ejectment brought by Hunt against Gilmore, to February Term 1849, for the premises and recovery by him, for the purpose of showing that Gilmore had violated his part of the agreement of January 21st 1848 in not delivering him possession. The plaintiff objected to the offer; it was admitted and a bill of exceptions sealed.

The defendant then called Kinney Goff, who testified that he and Hunt made an agreement as to the land and works, by which Goff was to take out coal at the rate of one-quarter of a cent per bushel until it amounted to $1000; that he had been prepared to go on, but Gilmore refused to give him possession; the agreement fell through on that account; both Gilmore and Hunt had agreed to the arrangement. He also gave in evidence the record of the executions under which the land was extended; Hunt's notice that he would retain the land; failure to pay second instalment of rent, and sale of the property, August 7th 1849.

The plaintiff submitted two points; the 2d was:—

"The presumption of law from the record of the action of ejectment in evidence is, that defendant received all damages for the detention of the possession of the premises from the commencement of the action to December 12th 1849, date of trial, and the jury should exclude all damages for the detention of the premises prior to that date, and defendant's remedy, if any, is an action for the mesne profits."

The court answered both the plaintiff's points in the negative, and instructed the jury that by the terms of the agreement of 21st January 1848, Hunt was entitled to the exclusive possession of the premises, except so far as is therein specially provided in relation to the privileges of Gilmore to load two boats, &c. "[And if the jury find from the evidence that Gilmore violated his part of the agreement by refusing to allow Hunt such possession, they might assess such damages as the evidence would warrant] for

[Gilmore *v.* Hunt.]

such violation, and if the same exceed the amount of the notes, they might certify the balance in favor of the defendant; if less than the amount of the notes, then the plaintiff would be entitled to receive the balance due on the notes."

The jury found for the defendant $450. The court overruled a motion for a new trial, but directed the judgment to be entered generally for the defendant, January 5th 1856.

On the 24th of August 1868, the death of the defendant was suggested, and Robert S. Hunt, his administrator, substituted.

Same day judgment was entered on the verdict.

The defendant took out a writ of error; the judgment was reversed by the Supreme Court (9 P. F. Smith 450), and judgment directed to be entered on the verdict for the defendant for $450, with interest from December 3d 1855.

The plaintiff then took a writ of error, and assigned for error, rejecting his offer of evidence, denying his 2d point and the part of the charge in brackets.

*J. Mellon,* for plaintiff in error.—As to the 1st and 2d assignments cited: Piper *v.* White, 6 P. F. Smith 90; Gardner *v.* Buckbee, 3 Cow. 120; Beck *v.* Greyball, 4 Casey 72; Seitzinger *v.* Ridgway, 9 Watts 496; Ervin *v.* Myers, 10 Wright 96; Fry on Specific Perf., § 796; Prothero *v.* Phillips, 25 L. J. Ch. 105; Duchess of Kingston's Case, 2 Smith's L. C. 674; Croft *v.* State, 6 Watts 375. As to the 3d assignment: Kain's Principles of Eq. 78; Penna. Railroad *v.* Kelly, 7 Casey 372; Penna. Railroad *v.* Vandever, 12 Id. 298; Heil *v.* Glanding, 6 Wright 493.

*J. M. Kennedy,* for defendant in error, referred to Piper *v.* White, Gardner *v.* Buckbee, *supra;* Sedgwick on Damages 131; Hunt *v.* Gilmore, 9 P. F. Smith 450.

The opinion of the court was delivered, January 3d 1871, by

WILLIAMS, J.—This record was brought before us two years ago by the defendant, for the correction of the error of the court below, in not entering judgment in favor of his intestate for the amount found to be due him by the jury, under his plea of set-off, and the judgment was reversed by this court, and entered for the defendant on the verdict in accordance with the finding of the jury. The case is reported in 9 P. F. Smith 450. It is now brought up by the plaintiff, for the correction of alleged errors committed in the trial, before the finding of the verdict. The plaintiff and the defendant's intestate, who was living at the time of the trial, were the owners of a tract of coal-land in Westmoreland county, on which there was an open mine, which they had worked in partnership—but having become involved, the plaintiff sold out his interest in the coal property, subject to the payment

of the judgments and other debts of the firm, to the defendant for the sum of $650—$100 payable in seven days, and the balance, $550, in three equal instalments, for which the notes in suit were given at two, four and six months, each for the sum of $183.33.

On the trial, the defendant set up as a defence, under his plea of set-off, the refusal of the plaintiff to give him possession of the property, in accordance with the terms of his agreement, and gave in evidence the record of an ejectment which he brought against the plaintiff, in the Common Pleas of Westmoreland county, to February Term 1849, for the recovery of the possession of said property, in which a verdict and judgment were rendered in his favor; and showed, by the testimony of Kinney Goff, that he had made an agreement with the defendant to take out coal sufficient to pay $1000, at one-fourth of a cent a bushel; that he was ready and prepared to go on with the contract, but that it fell through in consequence of the refusal of the plaintiff to let him have possession of the property.

The jury, under the instructions of the court, found a verdict for the defendant, and returned a certificate in his favor for the sum of $450. The consequence of this finding is that the defendant gets the plaintiff's half of the property for nothing, and the sum of $450 as damages, because he did not obtain possession of it a year or two sooner. This result, however wrong, if occasioned by the error of the jury, we have no power to correct; but if it was occasioned, as alleged, by the error of the court in the instructions given to the jury as to the measure of damages for the plaintiff's refusal to deliver possession of the property to the defendant, then it is our duty to correct it. The court charged that "if the jury find from the evidence that Gilmore violated his part of the agreement by refusing to allow Hunt such possession, they might assess such damages as the evidence would warrant." This was leaving the jury to find such damages as they thought proper, without giving them any rule or standard for their guidance. It was not a mere omission, but a misdirection; and the result, as shown by their verdict, was that they ran wild in their finding. They allowed the defendant, as damages, the $1000 which Kinney Goff had agreed to pay him for the privilege of taking out 400,000 bushels of coal at one-fourth of a cent per bushel, without a particle of evidence that the defendant had paid him any damages for the breach of the contract in not being able to deliver him possession of the mine, and without any evidence that the coal remaining in the mine, as it did, was worth any less at the time of the trial than the price which Goff had agreed to pay for it. The court, instead of leaving the damages to the discretion or caprice of the jury, should have instructed them as to the proper rule or measure of damages for the breach of a contract, such as

[Gilmore *v.* Hunt.]

this, for the sale and delivery of the possession of real estate; and the measure which the jury would in law have been bound to apply, would be the amount of rent or profit that the defendant might have derived from the property from the time when possession ought to have been delivered to him under the contract and the time when it was obtained under the action of ejectment; in other words, the mesne profits during the interval. The court should hold the jury to the strict legal rule or measure of damages with a firm hand, by setting the verdict aside and granting a new trial whenever the jury palpably disregard or transcend the rule by their finding.

The other assignments of error are not sustained, and there is nothing in them requiring discussion. But for the error of the court, in not instructing the jury as to the proper measure of damages for the plaintiff's breach of the agreement in refusing to deliver possession of the property, the judgment must be reversed.

Judgment reversed, and a *venire facias de novo* awarded.